# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
### (Northern Division)

---

### Case No.  AMD-04-CV-438
### Bankruptcy Adversary No. 03-05070-JS

---

### IN RE MICHAEL BOGDAN, Debtor
### IN RE INNER CITY MANAGEMENT, LLC, Debtor

*(Jointly Administered under Bankruptcy Case No. 000-6-0732-JS)*

---

### SEAN C. LOGAN, CHAPTER 7 TRUSTEE

*Appellant*

v.

### JOHN K. VOYATZIS, JKV REAL ESTATE SERVICES, INC.,
### FIDELITY NATIONAL TITLE INSURANCE COMPANY,
### AND STEWART TITLE GUARANTY COMPANY

*Appellees*

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

(The Honorable James F. Schneider,  Judge)

---

### BRIEF OF APPELLANT,
### SEAN C. LOGAN, CHAPTER 7 TRUSTEE

---

Lawrence J. Yumkas, 06357
Douglas B. Riley, 01220
Rosenberg | Martin | Funk | Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland  21201
(410) 727-6600

Attorneys for Appellant,
Sean C. Logan, Chapter 7 Trustee

# TABLE OF CONTENTS

Page

Table of Contents ................................................................................................................. i

Table of Authorities .............................................................................................................. ii

Brief of Appellant ................................................................................................................. 1

Basis of Appellate Jurisdiction ............................................................................................ 1

Statement of Issues Presented .............................................................................................. 2

Standard of Appellate Review .............................................................................................. 2

Statement of the Case ........................................................................................................... 2

Statement of Facts ................................................................................................................. 4

Summary of Argument .......................................................................................................... 14

Argument ............................................................................................................................... 15

      I.      The Trustee Has Standing To Assert The Causes of Action Stated
             In The Complaint ................................................................................................. 15

      II.     In View Of The Assignments, The Trustee Has Standing To Assert
             Claims On Behalf Of The Bankruptcy Estate Even Against Third
             Parties With Whom The Debtor Was Engaged In Wrongdoing ........................... 18

Conclusion ............................................................................................................................. 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re A. R. Baron & Co.,
 280 B.R. 797 (Bankr. S.D.N.Y. 2002)...........................................................13, 18, 19

Belfance v. Bushey (In re Bushey),
 210 B.R. 95 (6th Cir. BAP 1997)...............................................................................20

In re Ben Franklin Retail Stores, Inc.,
 225 B.R. 646 (Bankr.N.D.Ill. 1998) ..........................................................................16

Caplin v. Marine Midland Grace Trust Co. of New York,
 406 U.S. 416, 92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972).........................................15, 19

Corzin v. Fordu (In re Fordu),
 209 B.R. 854 (6th Cir. BAP 1997).............................................................................20

Creditors Trust v. Bairnco Corp. (In re Lippe),
 218 B.R. 294 (S.D.N.Y. 1998)..................................................................................13

Finova Capital Corp. v. Lawrence,
 2000 WL 1808276 (N.D. Texas 2000) ..................................................................16, 17

Hirsh v. Arthur Andersen & Co.,
 72 F.3d 1089 (2nd Cir. 1995).....................................................................................13

Keilisch v. Education Credit Management Corporation,
 258 F.3d 315 (4th Cir. 2001) ......................................................................................2

Lawrence v. Jackson Mack Sales, Inc.,
 837 F. Supp. 771 (S.D.Miss. 1992), *aff'd*, 42 F.3d 642 (5th Cir. 1994) .....................16

Loughran v. Loughran,
 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219 (1934)....................................................21

National City Bank of Minneapolis v. Lapides (In re Transcolor),
 296 B.R. 343 (Bankr. D. Md. 2003) ..........................................................................14

In re Ozark Restaurant Equipment Co.,
 816 F.2d 1222 (8th Cir.), *cert. denied,* 108 S.Ct. 147 (1987)......................................16

Sender v. Simon,
 84 F.3d 1299 (10th Cir. 1996) ...................................................................................20

Shearson Lehman Hutton, Inc. v. Wagoner,
 944 F.2d 114 (2d Cir. 1991)..................................................................................13, 16

Terlecky v. Abels,
 260 B.R. 446 (S. D. Ohio, 2001) ................................................................19

Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.),
 289 B.R. 563 (Bankr. S.D.N.Y. 2003)..............................................18, 19

Williams v. California 1st Bank,
 859 F.2d 664 (9th Cir. 1988) .................................................15, 16, 17, 19

Matter of Wischan,
 77 F.3d 875 (5th Cir. 1996) ........................................................................16

### STATE CASES

Adams v. Manown,
 328 Md. 463, 615 A.2d 611 (1992) ............................................................20

Niner v. Hanson,
 217 Md. 298, 142 A.2d 798 (1958) .......................................................21, 22

Space Aero Products Co. v. R.E. Darling Co.,
 238 Md. 93, 208 A.2d 74 *cert. denied*, 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed. 2d 83
 (1965).........................................................................................................21

### FEDERAL STATUTES

11 U.S.C. § 541(a) ...........................................................................................22

28 U.S.C. § 157(b) ...........................................................................................20

28 U.S.C. § 158...................................................................................................1

18 U.S.C. § 371...................................................................................................4

### FEDERAL RULES

Fed.R.Bankr.P. 8001....................................................................................... 1

Fed.R.Bankr.P. 8013....................................................................................... 2

### MISCELLANEOUS

3 Collier on Bankruptcy ¶ 323.02[2] (15th Ed. Revised 1997) ..........................19

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

---

**Case No.  AMD-04-CV-438**
**Bankruptcy Adversary No. 03-05070-JS**

---

**IN RE MICHAEL BOGDAN, Debtor**
**IN RE INNER CITY MANAGEMENT, LLC, Debtor**

*(Jointly Administered under Bankruptcy Case No. 000-6-0732-JS)*

---

**SEAN C. LOGAN, CHAPTER 7 TRUSTEE**

*Appellant*

v.

**JOHN K. VOYATZIS, JKV REAL ESTATE SERVICES, INC.,**
**FIDELITY NATIONAL TITLE INSURANCE COMPANY,**
**AND STEWART TITLE GUARANTY COMPANY**

*Appellees*

---

<u>**BRIEF OF APPELLANT**</u>

      Sean C. Logan, Chapter 7 Trustee in the bankruptcy estates of Michael Bogdan, a/k/a Andrew Michael Bogdan, Jr., and Inner City Management, LLC, by his undersigned attorneys, having appealed to this Court from the United States Bankruptcy Court's Order Dismissing Complaints With Prejudice, entered on December 2, 2003, submits the Brief of Appellant.

<u>**Basis of Appellate Jurisdiction**</u>

      The District Court's appellate jurisdiction is based upon 28 U.S.C. § 158 (a) and Rule 8001 of the Federal Rules of Bankruptcy Procedure.

1

**Statement of the Issues Presented**

1.      Did the bankruptcy court err in finding that the Chapter 7 trustee cannot assert the claims of individual creditors who have unconditionally assigned their causes of action to the bankruptcy estate?

2.      Did the bankruptcy court err in finding that the Chapter 7 trustee lacks standing to assert claims on behalf of the bankruptcy estate against third parties with whom the debtor was engaged in wrongdoing?

**Standard of Appellate Review**

The applicable standard of appellate review is found in Bankruptcy Rule 8013, which provides:

> On an appeal the district court … may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

With respect to a bankruptcy judge's conclusions of law, the district court's review is *de novo.  Keilisch v. Education Credit Management Corporation*, 258 F.3d 315 (4th Cir. 2001).

**Statement of the Case**

The Debtors, Michael Bogdan, a/k/a Andrew Michael Bogdan, Jr. and Inner City Management, LLC ("Debtors") filed voluntary petitions for relief under Chapter 7 of the United States Bankruptcy Code ("Code") on August 25, 2000 ("Petition Date") and, shortly thereafter, Sean C. Logan was appointed Chapter 7 Trustee to both estates.  The cases were briefly converted to Chapter 11 reorganizations, and on November 13, 2000, an Order providing for this joint administration was entered.  On December 19, 2000 ("Reconversion Date"), upon the

Chapter 11 Trustee's request, the cases were reconverted to Chapter 7 liquidations and, shortly thereafter, the Office of the U.S. Trustee reappointed Sean C. Logan as Chapter 7 Trustee.

The adversary proceeding now under appeal began on January 17, 2003, when the Trustee filed an Amended Complaint against John K. Voyotzis ("Voyatzis"), JKV Real Estate Services ("JKV"), Fidelity National Title Insurance Company ("Fidelity"), and Stewart Title Guaranty Company ("Stewart") seeking damages for:

Count I (Civil Conspiracy against Voyatzis, JKV, Fidelity and Stewart)

Count II (Intentional Misrepresentation against Voyatzis, JKV, Fidelity and Stewart)

Count III (Fraudulent Concealment against Voyatzis, JKV, Fidelity and Stewart)

Count IV (Negligence against Fidelity and Stewart)

Count V (Negligence against Voyatzis and JKV)

Count VI (Breach of Contract against Fidelity and Stewart).

[Docket No. 1].

On February 21, 2003, motions to dismiss and supporting memoranda were filed by Voyatzis and JKV [Docket Nos. 2 and 3] and by Fidelity [Docket Nos. 4 and 5]. On April 18, 2003, Stewart also filed a motion to dismiss. [Docket No. 12]. The Trustee responded with memoranda opposing the motions to dismiss that he filed on March 13, 2003 and May 27, 2003, respectively. [Docket Nos. 7, 8, and 14]. Voyatzis and JKV then filed a reply memorandum on March 26, 2003. [Docket No. 9].

On April 28, 2003, a hearing was held on the motions to dismiss [Docket No. 13] and, on October 7, 2003, the Bankruptcy Court entered in several related, but different, proceedings, an Order Dismissing Complaints with Prejudice, accompanied by a Memorandum Opinion Granting Defendants' Motions To Dismiss Amended Complaints. In this adversary proceeding, however, the Bankruptcy Court did not sign the Order Dismissing Complaints until December 2, 2003, nor was it entered until December 2, 2003. [Docket No. 15]. Ten days after the Order Dismissing Amended Complaint was entered, the Trustee noted his appeal. [Docket No. 16].

3

## Statement of Facts

### The Parties

The Amended Complaint was filed by the Trustee in his own right as Chapter 7 Trustee and as the assignee of several mortgage lenders, each of whom is a creditor of the Estate, including American Investment Mortgage, Inc., America's Mortgage, LLC, Atlantic Regional Mortgage Corporation, Blue Ball National, Chadwick Mortgage, Inc., Delta Funding Corporation, Eastern Savings Bank, FSB, Ford Consumer Finance Company, Greenpoint Mortgage Funding, Inc., LL Funding Corporation., NMC Mortgage Corporation, and One Stop Mortgage, Inc. ("Mortgage Lenders").  [Amended Complaint, ¶ 10].

The Defendant Voyatzis is a settlement agent who, in conspiracy with others, including buyers, sellers, appraisers, and mortgage brokers, fraudulently induced unsuspecting Mortgage Lenders to make mortgage loans ("Mortgage Loans") to various buyers based upon grossly inflated appraisals and inaccurate loan applications, and who then disbursed the proceeds of the Mortgage Loans in a manner contrary to the Mortgage Lenders' intent and instructions. The Defendant JKV is a company owned and operated by Voyatzis.  [Amended Complaint, ¶ 11].  The Defendants Fidelity and Stewart are title insurance companies, which, according to the Amended Complaint, hired Voyatzis and JKV as their settlement agents.  [Amended Complaint, ¶ 12].

### The Conspiracy

The Debtor, Michael Bogdan ("Bogdan"), was the sole shareholder of Debtor Inner City Management, LLC ("Inner City") and Inner City's managing member.  Bogdan ran Inner City as his alter ego, and its financial dealings and transactions were intermingled and indistinguishable from Bogdan's own.  Bogdan also used an alias to buy and sell properties, and, from time-to-time, paid another to act as his straw man in buying and selling flipped properties. [Amended Complaint, ¶ 13].  In fact, since the Reconversion Date, Bogdan has pleaded guilty to a federal Criminal Information in which he was charged with conspiracy to commit mail and wire fraud and to making false statements in violation of 18 U.S.C. § 371.  [Amended

Complaint, ¶ 24].  According to the terms of his plea agreement, starting in approximately 1995, Bogdan entered into a conspiracy with others to obtain loans for the purchase of real property in Baltimore City, Maryland, by submitting false and fraudulent documentation as part of their loan applications, in furtherance of illegal flipping activity.  [Amended Complaint, ¶ 24].  As a result of Bogdan's illegal flipping activity, the Mortgage Lenders unwittingly made loans to buyers secured by properties having actual values significantly less than as represented by the conspirators.  [Amended Complaint, ¶ 25].

During the three years immediately preceding the Petition Date, the Debtors and his various co-conspirators were involved in the purchase and sale of numerous real properties in Baltimore City, each of which is specifically identified in the Amended Complaint.  [Amended Complaint, ¶¶ 14, 31].  These properties were bought and sold at grossly inflated prices, based upon bogus appraisals provided by co-conspirators including Appraisal Services of Central Maryland, Dale Schultz, Joanne Hogg, and Highmark Appraisals.  [Amended Complaint, ¶ 15]. Mortgage brokers, including Robert A. Gullace, Patricia A. Gullace, and American Security Mortgage, Inc., were also involved in the conspiracy, procuring Mortgage Lenders who, unwittingly, financed the purchase and sale of these properties by providing Mortgage Loans, based upon the bogus appraisals and far exceeding the amounts they would have loaned had they known the real value of the properties.  [Amended Complaint, ¶ 16].  The loan proceeds were then disbursed by settlement agents, including Voyatzis and JKV, not according to the Mortgage Lenders' expectations and instructions, but in a fashion that allowed the buyers to receive substantial kickbacks from the proceeds of the Mortgage Loans.  [Amended Complaint, ¶ 17].

Fidelity and Stewart, by providing title insurance policies and closing protection letters through Voyatzis and JKV, by hiring and holding out Voyatzis and JKV as its agents, and by not providing adequate training and supervision to Voyatzis and JKV, encouraged the Mortgage Lenders to make Mortgage Loans that they would not otherwise have made, based upon the presumed regularity of the closings.  [Amended Complaint, ¶¶ 18 and 21].  With respect to the settlements conducted by Voyatzis and JKV, Voyatzis and JKV advanced their

own monies to make it appear that the buyer had paid earnest money and closing costs ("Settlement Costs") when, in fact, such monies were not paid, held the buyer's checks for Settlement Costs that would not otherwise have cleared but for the misdirection of Loan Proceeds to the buyer, prepared and recorded false and misleading closing documents, disbursed Loan Proceeds from the Mortgage Lenders in a manner contrary to the Mortgage Lenders' expectations and instructions, and otherwise enabled the buyers to fraudulently receive Loan Proceeds.  [Amended Complaint, ¶ 20].

<u>The Counts Against Voyatzis and JKV</u>

In Count I of the Amended Complaint (civil conspiracy), the Trustee alleges that Voyatzis and JKV were principal players in the conspiracy who, largely through the conduct set forth above and by procuring title insurance policies and closing protection letters from Fidelity and Stewart, enticed Mortgage Lenders into making loans to their co-conspirators.  Their involvement in the flipping of multiple properties, as identified in the Amended Complaint, was just one part of the much broader conspiracy involving the tortious acts of many co-conspirators and at least 39 similar transactions, each of which is set forth with particularity in the Amended Complaint.  As a result of the conspiracy and the tortious and unlawful acts of the co-conspirators, the Mortgage Lenders suffered actual legal damages measured by the difference between the amount the Mortgage Lenders loaned to buyers and the lesser amounts the Mortgage Lenders would have loaned had they known the real value of the properties.  The Mortgage Lenders also incurred damages in the amount of any deficiency they incurred in foreclosing on the properties because, but for the civil conspiracy, they would not have made the Mortgage Loans at all.  [Amended Complaint, ¶¶ 23-37].

In Count II of the Amended Complaint (intentional misrepresentation), the Trustee alleges that Voyatzis and JKV made false representations that the settlement documents they executed reflected accurately the manner in which Loan Proceeds entrusted to them were disbursed and, further, that the Loan Proceeds were disbursed according to the Mortgage Lender's understandings, expectations, and instructions.  They also intentionally misrepresented

to the Mortgage Lenders the real value of the properties, the actual purchase prices, and the fraudulent nature of the transactions.  It is also alleged that Voyatzis and JKV knew that their representations were false, that they were made for the purpose of defrauding the Mortgage Lenders, that the Mortgage Lenders justifiably relied upon the false statements made by Voyatzis and JKV, and that, as a consequence, the Mortgage Lenders suffered damages, measured in the same manner as discussed above. [Amended Complaint, ¶¶ 39-51].

In Count III of the Amended Complaint (fraudulent concealment), the Trustee alleges that Voyatzis and JKV had a duty to disclose to the Mortgage Lenders that they were conducting sham settlements, and that the Loan Proceeds were not really being used to pay the sellers of the properties.  They also had a duty to disclose to the Mortgage Lenders that the buyers were retaining the Loan Proceeds for themselves, that the documents did not properly reflect the manner in which the Loan Proceeds entrusted to them were disbursed, and that the Loan Proceeds were not disbursed according to the Mortgage Lenders' understandings, expectations, and instructions.  In addition, Voyatzis and JKV had a duty to disclose the real value of the properties, the actual purchase prices, and the fraudulent nature of the transactions. These facts were all material, and they were concealed, according to the Count III allegations, with the intent to deceive.  The Mortgage Lenders were, in fact, deceived and, being unaware of the information concealed from them, justifiably relied upon the information presented and made the Mortgage Loans to the buyers, leading to their claims for damages now assigned to the Trustee.   [Amended Complaint, ¶¶ 52-63].

In Count V of the Amended Complaint (negligence), the Trustee alleges that Voyatzis and JKV owed a professional duty to the Mortgage Lenders to ensure that the closing documents they executed and recorded accurately reflected the terms and conditions of the purchase-and-sale transactions and, further, that the Loan Proceeds entrusted to them were disbursed according to the Mortgage Lenders' understandings, intentions, and instructions.   It is also alleged that, in breach of these duties, and in violation of their professional standards, Voyatzis and JKV failed to execute and record closing documents that accurately reflected the

terms and conditions of the purchase-and-sale transactions and, further, the Loan Proceeds entrusted to them were not disbursed according to the Mortgage Lenders' understandings, intentions, and instructions. [Amended Complaint, ¶¶ 75-82].

The Counts Against Fidelity and Stewart

The Amended Complaint alleges in Count I that Fidelity and Stewart, acting through their agents, Voyatzis and JKV, issued title insurance policies and closing protection letters that helped to entice Mortgage Lenders into making loans to various co-conspirators. Their involvement in the flipping of multiple properties, as identified in the Amended Complaint, was just one part of the much broader conspiracy involving the tortious acts of many co-conspirators and at least 39 similar transactions, each of which is set forth with particularity in the Amended Complaint. Count I asserts that Fidelity and Stewart are bound into the broader conspiracy by the conspiratorial intent of their agents, Voyatzis and JKV, and by their wrongful acts pursuant thereto and in furtherance thereof. As a result of the conspiracy and the tortious and unlawful acts of the co-conspirators, the Mortgage Lenders suffered actual legal damages measured by the difference between the amount the Mortgage Lenders loaned to buyers and the lesser amounts the Mortgage Lenders would have loaned had they known the real value of the properties. The Mortgage Lenders also incurred damages in the amount of any deficiency they incurred in foreclosing on the properties because, but for the civil conspiracy, they would not have made the Mortgage Loans at all. [Amended Complaint, ¶ 24-37].

In Count II of the Amended Complaint, the Trustee alleges that Fidelity and Stewart, again bound by the acts of their agents, Voyatzis and JKV, made false representations that the settlement documents they executed reflected accurately the manner in which Loan Proceeds entrusted to them were disbursed and, further, that the Loan Proceeds were disbursed according to the Mortgage Lenders' understandings, expectations, and instructions. They also intentionally misrepresented to the Mortgage Lenders the real value of the various properties, their actual purchase prices, and the fraudulent nature of the transactions. It is also alleged that Voyatzis and JKV, acting as agents for Fidelity and Stewart, knew that their representations were

8

false, that they were made for the purpose of defrauding the Mortgage Lenders, that the Mortgage Lenders justifiably relied upon the false statements made by Voyatzis and JKV, and that, as a consequence, the Mortgage Lenders suffered damages, measured in the same manner as discussed above.  [Amended Complaint, ¶ 40-51].

In Count III of the Amended Complaint, the Trustee alleges that Fidelity and Stewart had a duty to disclose to the Mortgage Lenders that their agents were conducting sham settlements, and that the Loan Proceeds were not really being used to pay the sellers of the properties.  Fidelity and Stewart also had a duty to disclose to the Mortgage Lenders that the buyers were retaining the Loan Proceeds for themselves, that the documents did not properly reflect the manner in which the Loan Proceeds entrusted to their agents were disbursed, and that the Loan Proceeds were not disbursed according to the Mortgage Lenders' understandings, expectations, and instructions.  In addition, Fidelity and Stewart had a duty to disclose the real value of the properties, the actual purchase prices, and the fraudulent nature of the transactions.  These facts were all material, and they were concealed, according to the Count III allegations, with the intent to deceive.  The Mortgage Lenders were, in fact, deceived and, being unaware of the information concealed from them, justifiably relied upon the information presented and made the Mortgage Loans to the buyers, leading to their claims for damages now assigned to the Trustee.  [Amended Complaint, ¶¶ 53-63].

In Count IV of the Amended Complaint, the Trustee alleges that Fidelity and Stewart owed a duty of care to the Mortgage Lenders to employ honest and faithful settlement agents who would conduct closings in accord with industry-wide standards and in a professional manner; further, that Fidelity and Stewart owed a fiduciary duty to the Mortgage Lenders to ensure that their settlement agents would disburse the proceeds of the Mortgage Loans according to the Mortgage Lenders' expectations and instructions.  In breach of these duties, Fidelity and Stewart did not employ honest and faithful settlement agents.  They also failed to provide proper training and supervision for their settlement agents, so that Voyatzis and JKV did not conduct the settlements, or disburse the loan proceeds according to the expectations and instructions of the

9

Mortgage Lender, but did so in a manner inconsistent with industry-wide standards and the duty of care owed to the Mortgage Lenders as settlement agents.  As a direct and proximate result of Fidelity's and Stewart's direct and vicarious negligence, the Mortgage Lenders suffered damages.  [Amended Complaint, ¶¶ 66-74].

Finally, in Count VI of the Amended Complaint, the Trustee alleges that Fidelity and Stewart issued title insurance policies and closing protection letters for the settlements conducted by their agents, Voyatzis and JKV which, constituting a contractual obligation from Fidelity and Stewart to the Mortgage Lenders, entitled the Mortgage Lenders to be reimbursed by Fidelity and Stewart for the damages they suffered as a consequence of the negligence or intentional misconduct of Voyatzis and JKV in their conduct of real estate settlements.  By not paying them under the terms of the title insurance policies and closing protection letters, Fidelity and Stewart breached their contractual obligations to the Mortgage Lenders, leading to the damages now claimed.  [Amended Complaint, ¶¶ 84-92].

<u>Pleading Fraud with Particularity</u>

With regard to the "particulars" required to plead fraud, concealment, and conspiracy, the Amended Complaint sets forth as to each fraudulent loan transaction very specific facts to help the Defendants identify, with particularity, the nature of their wrongdoing. Information which is typical of that provided for each property is found at paragraph 31(c) of the Amended Complaint:

a.   [The Date]  On or about July 24, 1998,

b.   [The Victim]  American Investment Mortgage, Inc., or its assignor, in reliance upon the presumed regularity of the closing conducted on that date, by

c.  [The Perpetrators] Voyatzis and JKV, unaware that the buyer,

e.  [A Co-conspirator] Bogdan,

f.  [The First Specific Wrongful Act] had submitted a grossly inflated appraisal,

g.  [The Second Specific Wrongful Act] had misrepresented in the loan application how the loan proceeds were to be used, and without knowledge that,

i.  [The Third Specific Wrongful Act] Voyatzis and JKV had advanced their own monies to make it appear that Bogdan had paid Settlement Costs when, in fact, such monies were not paid,

j.  [The Fourth Specific Wrongful Act] were holding Bogdan's check for Settlement Costs that would not otherwise have cleared but for the misdirection of the loan proceeds by Voyatzis and JKV,

k.  [The Fifth Specific Wrongful Act] were misrepresenting or concealing these facts and the manner in which the monies were to be disbursed on the closing documents, and

l.  [The Sixth Specific Wrongful Act] intended to and, in fact, did disburse the loan proceeds in a manner contrary to their instructions,

m.  [The Injury] made to Bogdan a mortgage loan that enabled him to fraudulently receive monies, undersecured by the subject property located at 32 North Potomac Street,

n.  [The Seventh Specific Wrongful Act]  and to share these monies with other co-conspirators, including the seller,

o.  [Another Co-Conspirator] Joseph V. Smith, although they were not entitled to receive these monies.

<u>The Arguments Raised Below</u>

In their motion to dismiss, Voyatzis and JKV offered two arguments in favor of dismissal:

11

1.      A Chapter 7 Trustee lacks standing to assert the interests of a third-party mortgage lender, even if validly assigned.

2.      The Trustee has not alleged civil conspiracy and fraud with the requisite particularity.

Fidelity and Stewart raised seven arguments in support of their respective motions to dismiss:

1.      The Trustee cannot sue both Fidelity and Stewart in the same case under the rules of joinder.

2.      A Chapter 7 Trustee lacks standing to assert the interests of a third-party mortgage lender, even if validly assigned.

3.      The issuance of a title insurance policy by Fidelity or Stewart is insufficient to impute agency liability to them, and the Amended Complaint does not otherwise illustrate the existence and/or scope of any agency relationship between Fidelity or Stewart and the settlement agents.

4.      The Trustee has not alleged civil conspiracy and fraud with the requisite particularity.

5.      Fidelity owed no duty of care to the Mortgage Lenders, and its negligence was not the proximate cause of the injuries suffered by the Mortgage Lenders.

6.      The Trustee has not identified any contract breached by Fidelity.

7.      Fraud-based claims should not be assignable under Maryland law.

8.      Even if the Amended Complaint is not dismissed, the Court should abstain from hearing the case in favor of a state court.

### The Bankruptcy Court's Decision

The Bankruptcy Court did not address all of the arguments raised by Voyatzis, JKV, Fidelity, and Stewart.  Instead, it found simply that the Trustee lacked standing to assert the claims of an individual creditor, even if that creditor unconditionally assigned its cause of action

to the Trustee and all proceeds recovered therefrom will be paid to the bankruptcy estate.  In its Memorandum Opinion, the Bankruptcy Court offered the following rationale for its decision:

> To have standing to pursue a claim against nondebtor third parties, the trustee must allege that the debtor was harmed in a manner that is distinct from the harm suffered by the estate's creditors.  "[W]hen creditors have … a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so." *Hirsh*, 72 F.3d at 1093.[1]  "Where claims belong solely to the creditors and involve misconduct on the part of the debtor against creditors, *i.e.*, 'when a bankruptcy corporation has joined with a third party in defrauding its creditors, the trustee cannot recover against the third party for the damage to the creditors.'" *Creditors Trust v. Bairnco Corp. (In re Lippe),* 218 B.R. 294, 301 (S.D.N.Y. 1998), *quoting Wagoner*, 944 F.2d at 118.[2]
>
> The trustee also lacks standing under the doctrine of *in pari delicto*, according to which a debtor who was complicit in wrongdoing with third parties is precluded from pursuing a claim against a nondebtor third party.  "[W]hen a [debtor] has joined with a third party in defrauding creditors, the trustee cannot recover against the third party for the damage to the creditors." *A.R. Baron*, 280 B.R. at 800;[3] *Wagoner*, 944 F.2d at 118.

---

[1]  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1089 (2nd Cir. 1995).

[2]  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2nd Cir. 1991).

[3]  *In re A.R. Baron & Co., Inc.*, 280 B.R. 794 (Bankr. S.D.N.Y. 2002).

In the instant complaints for damages to creditors caused by the fraudulent conduct of the debtor and the entities under his control, the trustee lacks standing to sue the defendants for injuries they caused in concert with the debtor.  The cause of action belongs exclusively to the injured creditors of the bankruptcy estate and not to the debtor's estate, because absent the bankruptcy case, the debtor has no standing to sue the defendants. Because the instant suit is not premised upon injury to the estate, the trustee is not the proper plaintiff to bring suit.  *National City Bank of Minneapolis v. Lapides (In re Transcolor)*, 296 B.R. 343, 367 (Bankr. D. Md. 2003).

The result is not altered by the assignment to the trustee of specific claims against the debtors by various mortgage lenders and/or purchasers of mortgages who were injured by the debtors' fraudulent conduct.  The trustee has no derivative standing to sue debtors based on the claims of individual creditors, whether by assignment or otherwise.  To grant such standing not specifically authorized by the Bankruptcy Code would unlawfully expand the traditional powers of bankruptcy trustees and defeat the statutory scheme created by Congress.

Memorandum Opinion, pp. 8-9.

## <u>Summary of Argument</u>

I.      The Bankruptcy Court erred in finding that the Chapter 7 Trustee cannot assert the claims of individual creditors who have unconditionally assigned their causes of action to the bankruptcy trustee.

II.     The Bankruptcy Court erred in finding that the Chapter 7 Trustee lacks standing to assert claims on behalf of the bankruptcy estate against third parties with whom the debtor was engaged in wrongdoing.

**Argument**

I.     THE TRUSTEE HAS STANDING TO ASSERT THE
       CAUSES OF ACTION STATED IN THE COMPLAINT.

Without authority, the Bankruptcy Court states that, "The trustee has no derivative standing to sue debtors based on the claims of individual creditors, whether by assignment or otherwise."  Memorandum Opinion, p. 9.  The Defendants, in taking the same position, relied in their motions to dismiss upon *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), for the proposition that a trustee cannot bring an action on behalf of a subset of an estate's creditors.  The *Caplin* case, however, is inapplicable to the current facts.  The Trustee here has not filed the Amended Complaint on behalf of the Mortgage Lenders or for any subset of creditors.  Instead, the Amended Complaint has been filed on behalf of the Estate itself, a fact that the Bankruptcy Court fails to perceive. What both the Defendants and the Bankruptcy Court ignore is that the Trustee, not the Mortgage Lenders, owns the assigned causes of action.

Thus, the Trustee here is not expending estate assets to recover funds belonging to third-party creditors, but has filed the Amended Complaint to recover funds for the Estate itself. There is only one case cited by the Defendants that addresses the assignments of causes of action to bankruptcy trustees.  That case, the Ninth Circuit's opinion in *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988), highlights exactly why *Caplin* is inapplicable here.  In *Williams,* the Trustee took a **limited** assignment from certain creditors that reserved for the assigning creditors all recoveries over and above the costs of the suit.  As the Ninth Circuit noted, "… the assignments notwithstanding, the investors plainly remain the real parties in interest in these actions [because t]he Trustee and the estate will recoup only administrative costs from a

15

favorable judgment; the investor-assignors receive the bulk of any recovery." Williams, supra at 666.  In the instant case, though, the assignments received by the Trustee are unconditional and in no way limited.  The Estate is the only entity that will receive funds from the successful resolution of the Amended Complaint.  Given this fact, *Caplin* is just not relevant.

The better authority is *Finova Capital Corp. v. Lawrence*, 2000 WL 1808276 (N.D. Tex. 2000).  In *Finova*, as part of a settlement agreement, the Trustee took the assignment of certain third-party claims that did not otherwise belong to the Estate.  Hearing an objection to the Trustee's standing to pursue these assigned claims, the United States District Court upheld the Trustee's standing, setting forth clearly and concisely the controlling law:

> Under the Bankruptcy Code, a trustee is empowered to collect
> and preserve "property of the estate."  11 U.S.C. § 704(1).  Claims
> belonging to the debtor are property of the estate.  <u>*See Matter of*</u>
> *Wischan,* 77 F.3d 875, 877 (5th Cir. 1996); *Lawrence v. Jackson*
> *Mack Sales, Inc.,* 837 F.Supp. 771, 779 (S.D.Miss. 1992), *aff'd,* 42
> F.3d 642 (5th Cir. 1994).  This includes causes of actions acquired
> by way of assignment after commencement of a bankruptcy case.
> *See In re Ben Franklin Retail Stores, Inc.,* 225 B R. 646, 650
> (Bankr.N.D.Ill. 1998), *aff'd in relevant part,* 2000 WL 28266
> (N.D.Ill. Jan. 12, 2000).
>
> However, a trustee does not have standing to pursue actions on
> behalf of individual creditors.  *See Shearson Lehman Hutton, Inc.*
> *v. Wagoner,* 944 F.2d 114, 118 (2d Cir. 1991); *In re Ozark*
> *Restaurant Equipment Co.,* 816 F.2d 1222, 1228 (8th Cir.), *cert.*
> *denied,* 108 S.Ct. 147 (1987).  When a creditor assigns its claims
> against the debtor to the trustee, the assignment must make the
> claims property of the estate.  It cannot serve merely as a vehicle to
> allow the trustee to prosecute claims on behalf of a creditor.  This

distinction was illustrated in *Williams v. California 1st Bank,* 859

F.2d 664 (9th Cir. 1988).  In *Williams,* the Ninth Circuit held that a

purported assignment was insufficient to confer standing on the

bankruptcy trustee to prosecute creditors' claims against a third

party.  The court considered three factors in reaching this

conclusion: (1) the trustee received only administrative fees under

the assignment and was required to disburse the majority of

proceeds to the assignors-creditors; (2) the debtor had no claim of

its own against the third party; and (3) there was the potential for

inconsistent actions by creditors who did not assign their claims to

the trustee.  *Id.* at 666-67.

   The assignment in this case is vastly different than the one in

*Williams.*  Here, the Trustee must recover sufficient funds to pay

all administrative claims and provide for a $2 million distribution

to unsecured creditors before Finova receives any proceeds.  Even

then, Finova is entitled to just 25% of the next $1 million

recovered by the Trustee. The remaining 75% must be paid to

unsecured creditors. (Plf. Motion, Exh. B § II, ¶ 6).  Contrary to

defendants' argument, this arrangement does not

"disproportionately benefit Finova."  Nor is there any real

likelihood of inconsistent actions by other creditors.  The Court

concludes that the Trustee has standing to prosecute this claim

against defendants on behalf of the bankruptcy estate.

*Finova Capital Corp. v. Lawrence*, 2000 WL 1808276, at 2.

   As in *Finova*, the Trustee here has standing to pursue these claims against

Voyatzis, JKV, Fidelity, and Stewart.  The Mortgage Lenders' assignments are unconditional.

All of the damages recovered will become property of the Estate.  The Trustee is not pursing this

action on behalf of the Mortgage Lenders or any individual creditors, but for the benefit of all unsecured creditors.  Moreover, there is no risk of inconsistent actions by creditors as all of the Mortgage Lenders with claims against the Debtors have either assigned their claims to the Trustee, or chosen not to assert them within the applicable limitations period.

As the assignments confer standings upon him, the Trustee's Amended Complaint should not have been dismissed.

II.    IN VIEW OF THE ASSIGNMENTS, THE TRUSTEE
       HAS STANDING TO ASSERT CLAIMS ON BEHALF
       OF THE BANKRUPTCY ESTATE, EVEN AGAINST
       THIRD PARTIES WITH WHOM THE DEBTOR WAS
       ENGAGED IN WRONGDOING.

The Bankruptcy Court relies upon *Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563, 573 (Bankr. S.D.N.Y. 2003) to state that:

[A]s a general matter, a bankruptcy trustee stands in the shoes of

the debtor, and has standing to bring any suit that the debtor could

have instituted had the debtor not filed a petition under the

Bankruptcy Code.

In *Tese-Milner*, the court explained that this general rule "starts with the recognition that a trustee can assert claims to the extent, but only to the extent, that they belong to the estate and not to others (e.g., creditors, investors or depositors); thus the trustee lacks standing to assert claims that belong to creditors and not the estate."  *Tese-Milner v. Beeler, supra,* at 574.  Further inquiry must then be made, the court explained:

to determine whether the debtor was complicit in the wrongdoing

allegedly perpetuated by a third-party defendant.  *See A.R. Baron*,

280 B.R. at 800.  If such misconduct is imputed to the debtor, the

injury is deemed to be suffered by the debtor's creditors rather than

the debtor itself, thereby precluding a trustee from pursuing such a

claim on behalf of the debtor.  *Id.*

18

*Id.* at 574.

In the instant case, there is no dispute that the Debtors were complicit in the wrongdoing perpetrated by Voyatzis, JKV, Fidelity and Stewart.   However, that is not where the analysis ends because neither *Tese-Milner* nor *A.R. Baron & Co.*, or any case which they cite, deals with the assignment of creditors' claims to the Chapter 7 trustee.[4]  What the Bankruptcy Court has missed is that, in the instant case, the Trustee was <u>not</u> standing in the Debtors' shoes when he filed his Amended Complaint.  Instead, the Trustee, through the assignment of creditor claims to him, had acquired independent standing to assert these claims.

Indeed, the Code itself recognizes that a Chapter 7 trustee can assert claims in more than one capacity, for example, as both the debtor's successor-in-interest and also under the trustee's own avoiding powers.  This can be seen in *Terlecky v. Abels*, 260 B.R. 446 (S. D. Ohio, 2001), a case in which the Chapter 7 trustee brought an adversary proceeding to avoid certain fraudulent transfers arising out of a Ponzi scheme in which the debtor had participated:

> Actions brought by bankruptcy trustees fall into two general
> categories.  The first involves claims brought by the trustee as
> successor of the debtor's interest.  The second involves claims
> brought under one or more of the trustee's avoiding powers.  These
> two categories were described in 3 Collier on Bankruptcy ¶
> 323.02[2] (15th Ed. Revised 1997) as follows:

---

[4]   Besides *Williams, A.R. Baron & Co.* is the only other case cited by the Defendants for the proposition that assignments do not grant standing to a bankruptcy trustee.  *A.R. Baron & Co.,* however, involved a proceeding under the Securities Investor Protection Act ("SIPA") which had superceded A.R. Baron's earlier bankruptcy filing. *A. R. Baron & Co., 280 B.R. at* 797.  In that proceeding, the "assignments" that the court found insufficient to grant standing were statutory assignments to the Security Investor Protection Corporation ("SIPC"), **not assignments to the bankruptcy trustee or to the debtor's estate**.  *Id.* at 802-803.  Further, the assignments there were customer's net equity claims, a specific statutory action set forth under SIPA and one which could only be brought against the debtor, not against third parties.  *Id.* at 803.  The court specifically stated that the trustee's receipt of assignments which purported to assign such claims against third parties "disregarded SIPA's plain language [and] overreached his statutory authority."  *Id.*  This unique case, under a unique statutory scheme, has no bearing on the instant case.

> With respect to the former, the trustee stands in the
> shoes of the debtor and can only assert those causes of
> action possessed by the debtor.  The trustee is, of
> course, subject to the same defenses as could have been
> asserted by the defendant had the action been instituted
> by the debtor.

*See also Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 863 (6th Cir.
BAP 1997).

> In this case, the Trustee does not stand in the shoes of the Debtors
> seeking to recover property allegedly owed to the estate.  Instead,
> the Trustee stands in the place of a creditor who would have
> standing to pursue a fraudulent conveyance action under Ohio law.
> *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996); *Belfance v.*
> *Bushey (In re Bushey)*, 210 B.R. 95, 100 (6th Cir. BAP 1997).
> Consequently, this Court concludes that the fact that the Debtors
> participated in the fraudulent scheme does not provide a defense
> and does not bar the Trustee from pursuing the fraudulent
> conveyance claims.

*Id.* at 453.

In the instant case, the Trustee has sued Voyatzis, JKV, Fidelity, and Stewart not standing in the Debtors' shoes, but in the place of creditors who have standing to pursue these claims under Maryland law.   Moreover, the fact that the Debtors participated in a fraudulent scheme does not provide a defense, because the Trustee, asserting the assigned claims of the Mortgage Lenders, has independent standing to pursue Voyatzis, JKV, Fidelity, and Stewart. The assigned claims, in fact, are now property of the estate, and the liquidation of estate assets is a defined core proceeding under 28 U.S.C. § 157(b)(2)(O).

This is consistent with Maryland law, as espoused by the Maryland Court of Appeals in *Adams v. Manown*, 328 Md. 463, 615 A.2d 611 (1992).  In that case, a discharged debtor brought an action against his former partner to recover unscheduled funds.  The partner raised "unclean hands" as a defense, contending that the debtor had intentionally omitted the subject debts from his bankruptcy schedules.  The Court rejected the defense, stating that:

> The clean hands doctrine is not applied for the protection of the parties nor as a punishment to the wrongdoer; rather, the doctrine is intended to protect the courts from having to endorse or reward inequitable conduct.  *Space Aero Prods. Co. v. R.E. Darling Co.,* 238 Md. 93, 120, 208 A.2d 74, 88, *cert. denied,* 382 U.S. 843, 86 S.Ct. 77, 15 L.Ed. 2d 83 (1965); *Niner v. Hanson,* 217 Md. 298, 309, 142 A.2d 798, 803 (1958).  "It has also been said that the maxim has nothing to do with disapproval of the character or past behavior of the applicant but only with the effect of his present application." *Niner,* 217 Md. at 309, 142 A.2d at 803. "'Equity does not demand that its suitors shall have led blameless lives.'" *Id.* (quoting *Loughran v. Loughran,* 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219, 1227 (1934).  Thus, an important element of the clean hands doctrine is that the alleged misconduct must be connected with the transaction upon which the claimant seeks relief.

*Id.* at 474-75, 616-17. The court then noted several instances in which it refused to apply the clean hands doctrine in spite of the plaintiff's misconduct:

> "The relief sought was in no way predicated upon the misconduct. It has been held in a number of well considered cases that dismissal is not required even where the complainant was guilty of fraud, perjury or suppression of evidence, where the wrongdoing

does not result in benefit to the wrongdoer, or operate as a fraud or imposition upon the court in which relief is sought." [citations omitted]. …

"It is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this conduct. 'What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the rights he now asserts."

*Id.* at 475-76, 617. The court there held that, notwithstanding any misconduct by the debtor, the Chapter 7 trustee still had the right to collect "all of the property described in Code § 541(a), "wherever located and by whomever held". *Id.* at 477, 618. In the instant case, the Trustee also has the right to collect the assigned claims of the Mortgage Lenders which now belong to the jointly-administered Chapter 7 Estate. Pursuant to Code § 541(a)(7), they constitute an "interest in property that the estate acquires after the commencement of the case."

The Bankruptcy Court is simply wrong when it writes that, "The cause of action belongs exclusively to the injured creditors of the bankruptcy estate and not to the debtor's estate because absent the bankruptcy case, the debtor had no standing to sue the defendants." Memorandum Opinion, pp. 8-9. In fact, the cause of action <u>does</u> belong to the bankruptcy estate because the injured creditors assigned it, lock-stock-and-barrel, to the Trustee. Even in the absence of a bankruptcy case, the Trustee would still have standing to file suit as the real party in interest holding claims against Voyatzis, JKV, Fidelity, and Stewart.

## <u>Conclusion</u>

For the reasons set forth above, Sean C. Logan, Chapter 7 Trustee, respectfully asks the Court for an Order reversing the Bankruptcy Court's Order Dismissing Complaints With Prejudice, remanding the case for further proceedings consistent with this ruling, and granting such other and further relief as the Court deems just and proper.

22

Respectfully submitted,

Dated:  March 5, 2004

_____/s/_____
Lawrence J. Yumkas, 06357
Douglas B. Riley, 01220
Rosenberg | Martin | Funk | Greenberg, LLP
25 South Charles Street, Suite 2115
Baltimore, Maryland  21201
(410) 727-6600

Attorneys for Appellant,
Sean C. Logan, Chapter 7 Trustee

23

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of February 2004, copies of the Brief of

Appellant ("Brief") were sent electronically to:

Robert L. Ferguson, Jr., Esquire (rferguson@fsb-law.com)
Ann D. Ware, Esquire
James E. Crossan, Esquire
Attorneys for John K. Voyatzis and JKV Real Services

Richard L. Costella, Esquire (rcostella@milesstockbridge.com)
Robert S. Brennen, Esquire
John R. Fischel, Esquire
Attorneys for Stewart Title Guaranty Company

Brian C. Parker, Esquire (parker@pdklaw.com)
Attorney for Fidelity National Title Insurance Company

and copies of the Brief were mailed first class, postage prepaid to:

Michael Bogdan
813 Pine Creek Way
Abingdon, Maryland  21009
Debtor

Inner City Management, LLC
813 Pine Creek Way
Abingdon, Maryland  21009
Debtor

Sean C. Logan, Esquire
Haire Logan, LLP
2530 Riva Road, Suite 308
Annapolis, Maryland 21401

Office of the U.S. Trustee
Marsh & McLennan Building
300 West Pratt Street, Suite 350
Baltimore, Maryland  21201

_____
                    /s/
Douglas B. Riley

#196469 v1

24